Affirmed and Memorandum Opinion filed August 1, 2006








Affirmed and Memorandum Opinion filed August 1, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-00534-CR

____________

 

ANDREW JACKSON, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 209th
District Court

Harris County, Texas

Trial Court Cause No. 987,349

 



 

M E M O R A N D U M   O P I N I O N

Andrew Jackson, appellant, was indicted for the felony
offense of possessing more than four, but less than two hundred, grams of
cocaine with the intent to deliver.  A jury convicted appellant and the trial
court assessed punishment at seven years= confinement in
the Texas Department of Corrections.  Appellant raises six issues on appeal;
three issues challenge the legal sufficiency of the evidence, and the remaining
three challenge the factual sufficiency of the evidence.  We affirm.








Factual and Procedural Background

Deputies Chris Mullins and Mark Thomas, of the Harris
County Sheriff=s Department, were providing private security services
to Sterling Grove apartments on May 11, 2004.  At approximately 1:00 a.m., the
deputies encountered three men walking in the complex.  According to the
deputies= accounts, when
they announced they were law enforcement and ordered the men to stop, one of
them turned and fled.  The deputies agreed that it was appellant who turned and
began to run.

Deputy Mullins pursued appellant for approximately 300
yards, weaving around the apartment complex.  Deputy Mullins continued to
announce himself as a member of the sheriff=s department and
commanded appellant to stop.  Appellant was carrying a baseball sized Abaggie@ with a white
substance that Deputy Mullins instantly believed was cocaine.  While in
pursuit, Deputy Mullins noticed appellant discard the baggie.  Deputy Mullins
noted the location of the discarded baggie and continued pursuit.  It was not
long after appellant discarded the baggie that he stopped and submitted to
Deputy Mullins.  Deputy Thomas, who could not run in pursuit due to a foot
injury, found appellant and Deputy Mullins.  While Deputy Mullins retrieved the
baggie, Deputy Thomas maintained control over appellant.

The deputies escorted appellant to the apartment complex=s main office
where they awaited transportation for appellant.  Off-duty deputies are not
allowed to transport suspects.  While awaiting transport, Deputy Mullins
questioned appellant and field-tested the substance in the baggie, which tested
positive for cocaine and weighed 71.92 grams.  Deputy Mullins also confiscated
$1,021.76 from appellant.  Appellant, cocaine, and money were all turned over to
the sheriff=s department.  








According to Deputy Mullins=s report,
appellant claimed to have a job earning $6.50 an hour.  Deputy Mullins also
reported that appellant claimed the money belonged to him, but the drugs did
not.  However, Deputy Mullins testified that the money, which included over 60
different bills, was consistent with drug dealing given the number of bills and
way it was organized and carried.  Other testimony showed that a drug dog
alerted to the moneyCindicating the money had residue of
illegal narcotics.  Appellant and his witnesses gave a very different account.

Appellant=s theory of the case revolved around a
serious debilitating illness he suffered from the previous year.  The State did
not dispute that appellant had been hospitalized and, as a result, had been
homebound for months.  According to appellant and his witnesses, this illness
had left him incapable of caring for himself over a period of months.  In fact,
appellant had begun to drive again only in April 2004.  With the exception of
various small jobs for individuals, appellant had not been working, and never
told deputies he had a job.  Also, appellant had not ventured away from home by
himself until the night he was arrested.  Given his physical state, he could
not have run at all, much less attempted to evade deputies as they testified.

Concerning the money found in his pockets, both appellant
and his motherCwith whom he had been living since his illnessCtestified that it
was the mother=s money.  Appellant was to take the money to purchase
money orders to pay bills.  Appellant was going to buy the money orders after
picking up a female friend and her nephew at the Sterling Grove apartments. 
The friend, Lashonda Henderson, testified that appellant was supposed to pick
her up that evening; appellant testified he left his house between 9:30 and
10:00 p.m., made a brief stop, and then drove to the apartments.  








According to appellant, he arrived at the apartments, which
were a twenty-minute drive from his mother=s house, and was
searching for Henderson=s apartment.  However, he had trouble
locating her apartment, and enlisted the help of an acquaintance and his
friend.  The three were walking and talking when the deputies approached.  They
ordered the three to stop, at which point appellant halted and the other two
men ran.  The deputies attempted to chase the runners, but were unsuccessful. 
Appellant continued searching for the apartment, but the deputies returned and
apprehended him.  The deputies returned with the baggie of cocaine and
proceeded to attribute the entire event to him alone because they were angry
about not catching the true perpetrators.  Thus, according to appellant=s version of
events, it is impossible that he was involved with the drugs in any way.  

The jury convicted appellant, and the trial court assessed
his sentence.  Appellant timely filed notice of appeal.  On appeal, he raises
legal and factual sufficiency challenges.  Although divided into six issues,
his challenges allege only legally and factually insufficient evidence to prove
the substance recovered was cocaine, that appellant knew the substance was
cocaine, or to prove that appellant exercised control over the cocaine.  We
will affirm.

Analysis

I.        Legal
Sufficiency

 In
a legal-sufficiency challenge, we employ the familiar standard of viewing the
evidence in the light most favorable to the verdict.  King v. State, 29
S.W.3d 556, 562 (Tex. Crim. App. 2000).  If any rational trier of fact could
have found the essential elements of the offense beyond a reasonable doubt, we
will affirm.  Id.   We will not re-weigh the evidence and substitute our
judgment for that of the jury.  Id.  The evidence was legally sufficient
to establish the substance appellant was carrying was cocaine, appellant knew
it was cocaine, and appellant had sufficient control over the drugs.

One of appellant=s arguments is an
attack on the State=s proof of chain of custody for the
cocaine; the other two of his arguments are an attack on the proof of Aaffirmative links,@ see Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim.
App. 1995) (explaining that Aaffirmative link@ is merely shorthand for what must be
proven in a prosecution for possession of illegal drugs, such as awareness and
control). 
We will address each in turn to explain that the State adequately proved chain
of custody and affirmative links.








We will address first appellant=s issue that the
State did not prove chain of custody.  Appellant=s chief argument
is that the State did not prove that the cocaine tested and offered into
evidence was actually the substance Deputy Mullins obtained the night of
appellant=s arrest.  However, appellant ignores the testimony
regarding chain of custody.  The State introduced a witness whose sole function
in the trial was to explain how evidence is handled and delivered in the
sheriff=s department.  He
explained that he had personally delivered the sealed envelope into which
Deputy Mullins placed the substance to the crime laboratory.  The bag had a
case number attached to itCthe same case number as appellant=s case.  The State
also presented testimony from the crime laboratory=s chemist.  She
not only testified that the substance was cocaine, but also testified that it
was delivered to her in sealed condition, and was labeled with a unique number
indicating it was the same substance connected to appellant.  Finally, Deputy
Mullins testified that the substance field-tested positive for cocaine, that he
had personally sealed the contraband in the appropriate bag, had properly
labeled the bag with the appropriate case number, and then locked it in the
appropriate location for transportation to the crime laboratory.  This evidence
was legally sufficient to prove that the cocaine tested was the same cocaine
appellant discarded during the chase.  Now, we must determine if the State met
the rest of its burden.








In a drug case, the State must prove affirmative links; it
must prove that appellant (1) exercised actual care, control, or custody of the
substance; and (2) knew the substance was contraband.  See Brown, 911
S.W.2d at 747.  When determining if the State established affirmative links, we
examine factors such as the following: (1) the contraband was in plain view;
(2) the contraband was accessible to the accused; (3) the accused was the owner
of the place where the contraband was found; (4) the accused was the driver of
the automobile in which the contraband was found; (5) the contraband was found
on the same side of the vehicle seat as the accused was sitting; (6) the
contraband was found in an enclosed place; (7) the odor of drugs was present;
(8) paraphernalia to use the contraband was in view of or found on the accused;
(9) conduct by the accused indicated a consciousness of guilt; (10) the accused
had a special connection to the contraband; (11) occupants of the vehicle gave
conflicting statements about relevant matters; (12) the accused appeared to be
under the influence of drugs; and (13) affirmative statements connected the
accused to the contraband. Reed v. State, 158 S.W.3d 44, 47 n.1 (Tex.
App.CHouston [14th
Dist.] 2005, pet. ref=d).  Appellant contends there is no
evidence he knew he was carrying cocaine, and no evidence he exercised actual
care, control, or custody of the substance for a sufficient period of time.  We
disagree.  

The testimony indicated that appellant fled immediately
after making eye contact with the deputies.  Additionally, he refused to comply
with orders to halt.  He also attempted to discard the cocaine in order to
distance himself from the bag and its contents.  Appellant was in sole
possession of the baggie and it was in his hand, rather than concealed in a
place so that he would not have known about it.  A drug dog also alerted to the
money found in appellant=s pocket, indicating appellant had been in
possession of an illegal drug.  Finally, appellant never argued that he did not
know what was in the baggie, or that he did not exercise control over it for a
sufficient period of time so as to discard it.  Rather, appellant disavowed any
knowledge or possession of the cocaine at all.  

Viewed in the light most favorable to the verdict, the
evidence was legally sufficient to prove affirmative links.  Appellant=s behavior and the
fact that his money had residue of illegal narcotics indicates appellant knew
exactly what he was carrying and that he had been carrying and handling the
drugs for a sufficient amount of time to constitute exercising control.  His
sole possession of the cocaine and his attempts to distance himself from the
drugs by fleeing, discarding, and then disavowing the drugs at the scene are
all factors the jury could use to find him guilty.  We overrule appellant=s legal
sufficiency issues.

II.       Factual
Sufficiency








Appellant raises the same concerns as above through factual
sufficiency issues.  When
conducting a factual sufficiency review, we view the evidence in a neutral
light and will set the verdict aside only if the evidence is so weak as to make
the verdict clearly wrong and manifestly unjust, or if the contrary evidence is
so strong that the standard of proof, beyond a reasonable doubt, could not have
been met.  Escamilla v. State, 143 S.W.3d 814, 817 (Tex. Crim. App.
2004), cert. denied, 544 U.S. 950 (2005).  Although we have reviewed the
entire record and have considered all evidence presented at trial, we cannot
re-weigh the evidence and supplant the role of the jury to resolve conflicts in
testimony and evaluate witness credibility.  See Zuniga v. State, 144
S.W.3d 477, 482 (Tex. Crim. App. 2004) (stating that appellate courts are not
to Afind@ facts or substitute their judgment
for that of the jury).  The evidence is factually sufficient as well. 

Concerning appellant=s argument about
chain of custody, there is no conflicting testimony or contrary evidence to
consider.  Appellant asks us to conclude that the State did not produce
sufficient evidence, but fails to convincingly attack the evidence the State
offered and that we detailed above.  The evidence was factually sufficient,
when viewed in a neutral light, to prove the cocaine presented at trial was the
substance appellant was carrying and then discarded the night of his arrest. 
We now examine appellant=s other arguments.

Again, we must determine if the State properly linked
appellant to the cocaine.  The evidence we must weigh against the State=s is appellant and
his witnesses= testimony.  As we have outlined, appellant based his
theory of the case on his illness, his inability to run, and the deputies= anger at not
apprehending the other two men who appellant claims evaded arrest.  However,
this testimony presents nothing more than a credibility determination.

Appellant presented no medical testimony to prove he was
unable to run the night of his arrest.  Additionally, he was not able to
explain why, if he arrived at the Sterling Grove apartments sometime between
10:00 and 10:30 p.m., he was still walking around the apartment complex looking
for Henderson=s apartment at 1:00 a.m.  Although appellant contended
at trial that perhaps he was arrested earlier, he provided no alternate time. 
He also provided no plausible explanation for why he had a different amount of
money for purchasing money orders than his mother said was necessary, or an
explanation for why the bank from which appellant=s mother said she
withdrew the money, would issue the money is such small denominations of billsCover 60 different
bills.  Finally, appellant provided no reasonable explanation for why a drug
dog would alert to the money in his pocket.  








The jury was asked to determine which witnesses were
credible and which were not.  The jury concluded that appellant and his
witnesses were not credible, and that the State=s witnesses were
credible.  Its province is to make those determinations.  The evidence we have
detailed was sufficient to support the jury=s verdict.  We
overrule appellant=s factual sufficiency issues.

Conclusion

Having overruled each of appellant=s issues, we
affirm the judgment of the trial court.

 

 

 

/s/      Wanda McKee Fowler

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed August 1, 2006.

Panel consists of
Justices Hudson, Fowler, and Seymore.

Do Not Publish C Tex. R. App. P. 47.2(b).